# UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| RONNY AUSTON COLLIER ) | |
| ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No:_____ |
| ) | JURY DEMAND |
| TENNESSEE DEPARTMENT OF ) | |
| ENVIRONMENT AND CONSERVATION and ) | |
| TENNESSEE PARK RANGER ELIJAH ) | |
| MASTORIDIS ) | |
| ) | |
| *Defendants*. ) | |

**COMPLAINT**

Comes now the Plaintiff, Ronny Auston Collier, and for his Complaint would show as follows:

1. Plaintiff, Ronny Auston Collier ("Collier"), is a citizen and resident of Bledsoe County, Tennessee. During all times relevant to this complaint, he was a Bledsoe County farmer and a Bledsoe County Agricultural Teacher. He also drives a school bus for the Bledsoe County School System.

2. Defendant, Tennessee Department of Environment and Conservation ("TDEC"), is a department within the government of the State of Tennessee. TDEC exists was organized

1

and administered to effectively protect human health and environment, conserve natural resources, manage state parks, and promote overall quality of life in Tennessee. TDEC contains the Bureau of Conservation which manages all Tennessee State Parks and employs all Tennessee State Park Rangers. TDEC may be served with process at Davy Crockett Tower, 500 James Robertson Parkway, Nashville, Tennessee 37243 to either David W. Salyers, P.E., P.G, Commission of Environment and Conversation or Jenny Howard Deputy Commissioner, General Counsel of Environment and Conservation.

3. Defendant, Elijah Mastoridis ("Mastoridis"), is a Tennessee State Park Ranger assigned to the Fall Creek Falls State Park and may be served with process at 2009 Village Camp Road Spencer, Tennessee 38585.

## JURISDICTION AND VENUE

4. This action arises out of the false arrest and mistreatment suffered by Collier at the hands of the Defendant in Fall Creek Falls State Park within Van Buren County, Tennessee.

5. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Fourth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 *et seq*.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343. Further, this Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1357

as they arise from the same case and controversies.

7.      Venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391 (b)(1) and (2) as the events complained of occurred in the Eastern District of Tennessee.

**FACTUAL ALLEGATIONS**

8.      During all times relevant herein, Collier was a Bledsoe County farmer, Bledsoe County Agricultural Teacher, and Advisor to the Bledsoe County Future Farmers of America ("FFA").

9.      During the week of June 5-9, 2023, Collier and the Bledsoe FFA along with FFA members across the State of Tennessee attended the annual FFA Forestry Camp at Piney Creek Camp in Fall Creek Falls State Park.

10.     On the evening hours of June 8, 2023, Collier was asked to drive and get ten (10) pounds of flour from the Dollar General Store located near Fall Creek Falls State Park. The flour was needed for the next morning's breakfast.

11.     Mastoridis was seated in his patrol vehicle and parked right outside the entrance to Piney Creek Camp.

12.     As Collier exited the Piney Creek Camp, Mastoridis almost immediately started following Collier. Despite Mastoridis' claims in the affidavit of complaint, Collier never accelerated heavily by Mastoridis, never traveled wrong lane of travel of most of duration, and Collier never stumbled when he exited his vehicle. Further, Mastoridis was not

able to observe Collier continually and at one-point Mastoridis turned off his patrol vehicle headlights despite it being approximately 9:30 PM and dark outside.

13. Mastoridis initiated a traffic stop on Collier at Lakeside Road inside the limits of Fall Creek Falls State Park.

14. Without any prior interaction, Mastoridis approach Collier in his vehicle and belligerent and accusatory toward Collier. He accused Collier of being drunk. During the entire traffic stop, Mastoridis lacked any respect to Collier and was very demeaning and hostile.

15. Due to Mastoridis' inappropriate behavior, Collier requested to Mastoridis for another Park Ranger be present for the traffic stop. Mastoridis refused. Collier then began to call a friend who is a Park Ranger. Before completing the phone call, Collier was handcuffed by Mastoridis.

16. Mastoridis received consent to search Collier's vehicle and located no alcohol, no controlled substances, and no illegal contraband. Mastoridis made Collier stand on a slope for over one hour while being handcuffed behind his back. Due to the manner in which Mastoridis handcuffed Collier, Collier later developed physical injuries which are ongoing.

17. Prior to performing Standard Field Sobriety Tests ("SFST"), Collier asked Mastoridis to contact the FFA members to indicate Collier would be late in returning

to the camp. Mastoridis refused. Collier was wearing a badge identifying him as a chaperone with the FFA Forestry Camp.

18. Collier performed several SFST which Mastoridis claims he failed. Mastoridis ignored the facts that Collier suffers from gout and must were shoe inserts for heal spurs. Mastoridis was going to arrest Collier no matter how he performed on the SFST. In fact, Mastoridis knew he was going to arrest Collier when he first began following him.

18. After allegedly failing the SFST, Collier was handcuffed again but this time handcuffed by a deputy with the Van Buren County Sheriff's Office. Collier requested again for Mastoridis to contact the FFA Forestry Camp to inform them why was absent. Again, Mastoridis.

19. Due to Mastoridis belligerent and vindictive behavior, approximately twenty (20) FFA students were left at the Piney Creek Camp with only one (1) chaperon when there should be a minimum of two (2) chaperones.

20. Collier's wife called the main ranger station at Fall Creek Falls Camp to get someone to notify the FFA students why Collier had not returned to Piney Creek Camp. His wife was told the only person who could do that was Mastoridis and that Mastoridis refused to contact the Forestry Camp or the FFA Students.

21. Mastoridis arrested Collier but never initially informed Collier of what Tennessee criminal laws he violated. Collier was admitted to the Van Buren County Jail around

11:30 PM CDT on June 8, 2023. Later, he was charged with Speeding and Driving Under the Influence. Mastoridis was the only law enforcement officer to present testimony to the magistrate to seek an arrest warrant. The errors and omissions of Mastoridis' testimony were necessary and material to the finding of probable cause.l,

22. While at the Van Buren County Jail, Collier repeatedly asked to be administered a blood test and breathalyzer test to check for any proof of drugs or alcohol within Collier's system. Officials refused to administer these tests. Collier's wife also called Van Buren County Dispatch to request a blood test and breathalyzer test. Officials refused. On June 9, 2023, at approximately 2:00 AM CDT, medical personnel appeared at the Van Buren County Jail to administer a blood draw. Medical personnel were not allowed to administer the blood draw until Mastoridis was present.

23. At approximately 3:00 AM CDT, Mastoridis finally arrived at the Van Buren County Jail. Prior to coming inside the Van Buren County Jail, Mastoridis approached Collier's wife in the Van Buren County Jail's parking lot. Collier's wife came to the jail to post his bond. In a very forceful and brooding manner, Mastoridis threatened to charge Collier's wife with felony charges related to her calling Van Buren County Dispatch and requesting a blood test be administered.

24. Sometime after 3:00 AM CDT, medical personnel administered a blood test. The test occurred nearly five (5) and one-half hours after the initial traffic stop. Collier suffered

6

Case 1:24-cv-00189-CEA-SKL   Document 1   Filed 06/08/24   Page 6 of 14   PageID #: 6

further deprivation of liberty beyond the initial seizure at traffic stop. After posting a cash bond, Collier was released from the Van Buren County Jail at approximately 4:00 CDT. After being released, he was finally able to contact the Forestry Camp and FFA students.

25. In addition to being a farmer and agriculture teacher, Collier operates a school bus. He must maintain a Commercial Driver's License ("CDL") to operate a school bus. After being released from custody, Collier went to a local Urgent Care Clinic. This Urgent Care Clinic conducts drug and alcohol screening for the Tennessee Department of Transportation ("TDOT"). TDOT requires such testing for individuals with a CDL. Collier underwent the standard TDOT testing. As expected, there were no drugs or alcohol detected within Collier's system.

26. Collier shared the test results with his FFA students, their families, his school Principal, his bus supervisor, and the School Superintendent for Bledsoe County Schools. Despite his arrest, Collier was allowed to remain as teacher with the Bledsoe County Schools. Collier has taught agriculture at the Bledsoe Vocational Center for over thirty-two (32 years) and has operated a school bus for twenty-five (25) years. Collier's achievements as an educator include receiving East Tennessee Agriculture Teacher of the Year, Tennessee Agriscience Teacher of the Year, and Bledsoe County. Vocational Center Teacher of the year on several occasions.

27. Due to being charged with crimes, Collier had to hire counsel to represent him in the Van Buren County General Sessions Court. After Collier's blood was drawn, the blood sample was sent to the Tennessee Bureau of Investigation ("TBI") for forensic analysis. It took over seven (7) months for the blood alcohol and toxicology results to be released by TBI. Again, as expected the tests were negative for alcohol and drugs.

28. Collier and his counsel had to appear five (5) times in the Van Buren County General Sessions Court. On December 21, 2023, in Van Buren County General Sessions Court, a Prosecutor approached Collier's legal counsel and stated, "Your client just won the lottery. Whatever was in his system had cleared before we conducted the blood test."

29. The Prosecutor then advised Collier and his legal counsel he wanted Collier to plead guilty to Reckless Driving and that the Speeding and Driving Under the Influence charges would be dropped.

30. Collier contemplated the plea of guilt offer extended by the Prosecutor but refused to plea guilty as he was in fact not guilty. Before the Speeding and Driving Under Influence cases were dismissed in Van Buren County General Sessions Court on December 21, 2023, Mastroidis exited the courtroom and appeared before a Van Buren County Judicial Commissioner and swore out a Reckless Driving warrant for Collier.

31. After obtaining the warrant, Mastroidis entered the Van Buren County General

Sessions Court and observed the Speeding and Driving Under the Influence charges against Collier be dismissed. After the dismissal of the charges, Mastroidis with the aid of the Van Buren County Sheriff's Office arrested Collier in open court on the charge of Reckless Driving.  Mastroidis was the only law enforcement officer to provide testimony in seeking the arrest warrant for Reckless Driving. The errors and omissions of Mastoridis' testimony were necessary and material to the finding of probable cause.

32. Collier had to go thru the entire booking process a second time. His liberty was once more deprived than from just the initial seizure at the traffic stop. Collier's mugshot photograph was published again via the internet to Van Buren and Bledsoe County communities. While being booked on the Reckless Driving charge, Mastroidis came back into the Van Buren County Jail for the express purpose of watching Collier get booked again, and also to try and intimidate and humiliate Collier. As expected, the Reckless Driving charge was dismissed on February 1, 2024, in the Van Buren County General Sessions Court.

33. On two occasions, Collier was arrested, transported, and booked into the Van Buren County Jail, where he was required to post a bond before he was released.

34. Collier was required to abide by conditions of release and was required to hire legal counsel, attend court five (5), and defend these charges.

35. Collier obtained unqualified dismissals of all charges.

36. Collier's reputation is irredeemably blemished and diminished.

37. Collier has suffered severe emotional distress, loss of enjoyment of life, and continues to suffer from physical injuries due to the manner in which he was handcuffed by Mastroidis.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS-DELIBERATE INDIFFERENCE**
**FAILURE TO TRAIN, FAILURE TO INVESTIGATE**
**DEFENDANT TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION**
**42 U.S.C. § 1983**

38. Collier incorporates by reference all allegations above as if restated fully herein verbatim.

39. In committing the acts above-described, TDEC acted under the color of state law and with deliberate indifference to Collier's protected rights under the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free from unreasonable searches and seizures.

40. TDEC failed to properly investigate the two cases against Collier stemming from his June 9, 2023, arrest and his subsequent December 21, 2023, arrest.

41. The June 9, 2023, arrest and the December 21, 2023, arrest where the result of TDEC's failure to train Tennessee State Park Rangers on how to properly investigate Driving Under the Influence cases and other Driving cases as well. This failure exposed Collier to deprivations of his constitutional rights.

42. Furthermore, all defendants failed to properly investigate the June 9, 2023, arrest and the December 21, 2023, arrest such that they were deliberately indifferent to the protected constitutional rights of Collier.

43. This failure to train and investigate are the direct and proximate cause of Collier's damages sustained because of the false arrests and malicious prosecution. Had Mastroidis been properly trained, and all defendants had fully investigated the two (2) arrests, Collier would have never been arrested.

## COUNT II
## VIOLATION OF THE 4TH AMENDMENT RIGHTS TO BE FREE FROM FALSE ARREST AND UNLAWFUL SEIZURE
## ALL DEFENDANTS
## (42 U.S.C. § 1983)

44. Collier incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

45. All defendants, acting under the color of law, arrested Collier on two separate occasions without probable cause and knowingly ignored exculpatory evidence and as such participated in the illegal seizure and arrest of Collier.

46. Collier's false arrests were sanctioned and ratified by all defendants.

47. These actions violate Collier's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

# COUNT III
# VIOLATION OF THE 4TH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL PROSECUTION
# ALL DEFENDANTS
# (42 U.S.C. § 1983)

48. Collier incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

49. All defendants, acting under the color of law, prosecuted Collier on two separate occasions without probable cause and knowingly ignored exculpatory evidence and as such participated in the illegal prosecutions of Collier.

50. Collier's false prosecutions were sanctioned and ratified by all defendants.

51. These actions violate Collier's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

# DAMAGES

52. As a result of the conduct of each defendant named in this case, Collier has suffered:

    a. Serious mental and emotional distress

    b. Physical injuries

    c. Loss of business income

    d. Loss of enjoyment of life

e. Diminished reputation and standing in the community

f. Out of pocket expenses associated with posting bail, defending criminal charges, and rebuilding his business.

WHEREFORE, Collier presents:

I. That a jury of 12 persons be empaneled to try this case;

II. A declaratory judgment that the Defendants' conduct violated Collier's protected constitutional rights;

III. For punitive damages;

IV. For nominal damages;

V. For compensatory damages;

VI. Reasonable attorney's fees and litigation expenses;

VII. Pre and post judgement interest

VII. Such other and general relief as the Court deems just.

Respectfully submitted,

   /s/ Howard Upchurch
Howard Upchurch, BPR# 010145
3173 Main St.
P.O. Box 381
Pikeville, TN 37367-6672
Telephone: (423) 447-2903
Facsimile: (423) 447-6672
upchurchlaw@bledsoe.net

   <u>/s/Neal Pinkston_____</u>
Neal Pinkston, BPR# 021245
Pinkston Law, PLLC
1216 E. Main St., Ste. 206
Chattanooga, TN 37408
Office Number: (423) 654-8326
Cellular Number: (423) 497-7228
neal@nealpinkstonlaw.com
mnealpinkston@gmail.com