UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| RONNY AUSTON COLLIER, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:24-cv-189 |
| v. | ) | Judge Atchley |
| ELIJAH MASTORIDIS, *et al.*, | ) | Magistrate Judge Dumitru |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Elijah Mastoridis's Motion to Dismiss [Doc. 21]. For the following reasons, the Motion [Doc. 21] is **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

This is a civil rights case. In June 2023, Plaintiff Ronny Auston Collier chaperoned the Future Farmers of America Forestry Camp at Fall Creek Falls State Park. [Doc. 19 at ¶¶ 9–10]. One night, he was tasked with purchasing flour for the next day's breakfast. [*Id.* at ¶ 11]. As Collier drove to the store, Defendant Elijah Mastoridis, a Tennessee State Park Ranger, began following him and initiated a traffic stop. [*Id.* at ¶¶ 8, 12–13]. Mastoridis then approached Collier, accused him of being drunk, and placed him in handcuffs. [*Id.* at ¶¶ 14, 19]. Collier remained cuffed and standing on a slope while Mastoridis performed a consensual search of his vehicle. [*See id.* at ¶¶ 20, 28]. This search did not reveal any alcohol, drugs, or other contraband. [*Id.* at ¶ 21]. Nevertheless, Mastoridis required Collier to perform several standard field sobriety tests which he determined Collier failed. [*Id.* at ¶¶ 24–25]. In making this determination, Mastoridis ignored the fact that Collier suffers from gout and that his gait is affected by special shoe inserts he must wear for heel spurs. [*Id.* at ¶ 26].

Collier was then taken to the Van Buren County Jail, issued a multiple offense citation for Speeding and Lane Violations, and charged with Driving Under the Influence. [*Id.* at ¶¶ 37–38; Doc. 21-1; Doc. 21-3].[1] Around this time, Mastoridis obtained an arrest warrant for the DUI charge from a Van Buren County magistrate.[2] [Doc. 21-3 at 1]. To obtain this warrant, Mastoridis prepared an affidavit of complaint which Collier claims was littered with false statements. [*Id.* at 2; Doc. 19 at ¶ 40]. After several hours in jail, Collier's blood was taken for testing, and he was released after posting bond. [Doc. 19 at ¶¶ 51–53]. Collier then immediately went to an urgent care clinic to complete a separate drug and alcohol screening as required to maintain his commercial driver's license. [*Id.* at ¶¶ 56–57]. Both this screening and the government's blood test came back negative for alcohol and drugs. [*Id.* at ¶¶ 58, 62]. Faced with this reality, the prosecutor in Collier's case offered him a deal, plead guilty to Reckless Driving in exchange for the DUI and Speeding charges being dropped. [*Id.* at ¶¶ 64–65]. Collier refused. [*Id.* at ¶ 66]. In response, Mastoridis went to a Van Buren County magistrate and obtained a new warrant to arrest Collier for Reckless Driving based on a materially identical affidavit to the one he prepared to obtain Collier's DUI warrant. [*See id.* at ¶ 67; Doc. 21-2 at 3; Doc. 21-3 at 2]. With this new warrant in hand, Mastoridis arrested Collier for Reckless Driving. [Doc. 19 at ¶¶ 70–71]. This charge was later dismissed, but Collier was convicted of driving 24mph in a 20mph zone.[3] [*Id.* at ¶ 76; Doc. 21-2 at 1–2].

---

[1] The Court may consider Docs. 21-1 through 21-3 without converting the instant Motion into one for summary judgment for the reasons discussed *infra* Section III.A.

[2] Under Tennessee law, arrest warrants "serve[] a dual function: first, as the authority for an arrest (where an arrest has not already been lawfully made) and, secondly, as a statement of the charge which the accused is called upon to answer." TENN. R. CRIM. P. 4 (Advisory Commission Comment). When a Tennessee defendant is arrested without a warrant, law enforcement will still obtain an arrest warrant after the fact as the warrant "still serves as the official charging instrument, issued after a judicial finding of probable cause, and gives notice of the charge which must be answered." *Id.*

[3] Collier alleges that he obtained an "unqualified dismissal of all charges." [Doc. 19 at ¶ 81]. Because this allegation is contradicted by the judgment in Collier's case, [Doc. 21-2 at 1–2], the Court is not required to accept it as true, even at the motion-to-dismiss stage. *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

The instant lawsuit followed, alleging (among other things) that Mastoridis violated Collier's Fourth Amendment rights by using excessive force against him, falsely arresting him, and maliciously prosecuting him. [*See* Doc. 19 at ¶¶ 28–29, 82, 96–105]. Now, Mastoridis moves to dismiss those claims. [Doc. 21].

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. ANALYSIS

#### A. Consideration of the Motion's Exhibits

Before discussing the merits of the instant Motion, the Court finds it appropriate to first clarify what materials it considered when evaluating the Motion and the extent to which it considered them. The Motion contains three exhibits concerning the events underlying this case: (1) the multiple offense citation Mastoridis issued to Collier [Doc. 21-1]; (2) the affidavits Mastoridis prepared to obtain Collier's DUI and Reckless Driving warrants and the warrants themselves [Doc. 21-2 at 3–4; Doc. 21-3]; and (3) the Van Buren County General Sessions Court judgment against Collier for Speeding [Doc. 21-2 at 1–2]. Ordinarily, a court may only consider matters outside the complaint when ruling on a Rule 12(b)(6) motion to dismiss by converting the motion into one for summary judgment. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). That said, certain categories of evidence do not fall within this general rule. Specifically, a court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting a motion to dismiss into a motion for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, Mastoridis asserts that the Court may consider his exhibits because they are all public records. [Doc. 22 at 2 n.1, 3 n.2, and 4 n.3]. He further contends that the Court may consider the affidavits supporting the warrants because they are specifically mentioned in the Second Amended Complaint and central to Collier's claims. [*See id.* at 3 n.2]. He then goes on to argue that the facts contained in these exhibits mandate the dismissal of Collier's claims against him. [*See generally*

Doc. 22]. Mastoridis is correct that the Court may consider his exhibits when deciding the instant Motion, but he overstates the extent to which the Court may rely on them.

While a court may consider public records in the context of a motion to dismiss, this exception "allows a court to conclude *only* that the record exists; [it] does not allow the court to treat all information in the record as true." *Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) (emphasis added). There is, however, an exception to this rule for facts "that are not subject to reasonable dispute—such as the court's ultimate resolution of a prior case." *Id.* at 488 (internal quotation marks omitted). Applying this rule here, the Court may consider the judgment against Collier for the fact that he was convicted of Speeding but may consider the multiple offense citation and warrants *only* for the fact that they exist. *See id.*

As for the affidavits, they are central to Collier's claims to the extent that they relate to Collier's allegations that Mastoridis lied in the affidavits to secure both the post-arrest DUI warrant and the pre-arrest Reckless Driving warrant. [*See* Doc. 19 at ¶¶ 40, 42, 67–69]. Accordingly, the Court may consider these affidavits when ruling on the instant Motion. *Johnson v. Hayden*, 67 F. App'x 319, 323 n.4 (6th Cir. 2003) (approving of a district court's consideration of a warrant affidavit at the motion-to-dismiss stage while noting that the plaintiffs could still dispute the affidavit's contents). The Court's consideration of these affidavits, however, is limited. The Court cannot accept their factual assertions as true, especially when those assertions are contradicted by the Second Amended Complaint. *See id.*; *Blackwell*, 123 F.4th at 487 (noting that it would "flout[] basic pleading rules" to disregard the normal "presumption of truth" afforded to well-pled allegations simply because a defendant offered an exhibit with conflicting information). Instead, the Court can only consider the affidavits—and in particular the Reckless Driving affidavit—for purposes of evaluating whether a magistrate would have found probable cause to support Collier's

arrest absent the affidavit's allegedly false statements. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Having explained the extent to which it may consider the Motion's exhibits, the Court now turns its attention to the Motion's merits.

### B. Collier's Fourth Amendment Claims

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. CONST. amend. IV. In this case, Collier alleges that Mastoridis unreasonably seized him by twice arresting him, twice having him prosecuted, and using excessive force against him during his initial arrest. [Doc. 19 at ¶¶ 28–29, 82, 96–105; *see also* Doc. 32]. Mastoridis, on the other hand, asserts that Collier has failed to state a Fourth Amendment claim upon which relief can be granted. [*See* Doc. 22 at 5–13]. He further asserts that the doctrine of qualified immunity mandates the dismissal of the claims against him [*Id.* at 14–15]. As detailed below, the Court finds that Mastoridis is entitled to the dismissal of Collier's excessive force claim but that Collier's false arrest and malicious prosecution claims may proceed.

> 1. *Collier has failed to adequately allege that he was subjected to an unconstitutional use of force.*

Collier alleges that Mastoridis used excessive force against him by requiring him to stand on a slope with his arms handcuffed behind his back for over an hour, resulting in ongoing injuries. [*See* Doc. 19 at ¶¶ 28–29, 82]. This allegation, however, is insufficient to state an excessive force claim.

Excessive force claims arising out of a law enforcement officer's conduct during an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth

- 6 -

Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). This "is a fact-based inquiry, focusing on several factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Decker v. City of Athens*, No. 1:08-CV-27, 2009 U.S. Dist. LEXIS 55348, at *21 (E.D. Tenn. June 29, 2009) (quoting *Graham*, 490 U.S. at 396). Importantly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

This inquiry can take on additional nuance when an excessive force claim involves a plaintiff's handcuffing. Although the events surrounding a handcuffing are analyzed under the traditional objective reasonableness test, allegations that handcuffs were too tight are subject to a separate three-prong inquiry. *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021). Under this handcuffing test, a plaintiff can establish an excessive force claim by showing that "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Bd. of Trs.*, 583 F.3d 394, 401 (6th Cir. 2009). When a plaintiff alleges both that his handcuffs were too tight and that other forms of excessive force were employed against him, the Court must conduct both tests. *Hughey*, 3 F.4th at 289.

In this case, Collier alleges that he suffers ongoing physical injuries from being required to "spen[d] more than an hour standing on a slope with his arms handcuffed behind his back" during his initial arrest. [Doc. 19 at ¶¶ 28–29, 82]. He does not allege that the handcuffs were too tight or that he complained of their tightness. Consequently, Collier has failed to allege an excessive force

claim based on the handcuffing test. *See Morrison*, 583 F.3d at 401. Thus, the question becomes whether the other aspects of his arrest—i.e., being handcuffed behind his back and forced to stand on a slope—were objectively reasonable under the circumstances. Starting with the behind-the-back handcuffing, the Sixth Circuit "has suggested that handcuffing a suspect behind the back in the face of a 'severe and obvious medical injury' constitutes excessive force[.]" *Blosser v. Gilbert*, 422 F. App'x 453, 459 (6th Cir. 2011) (quoting *Dixon v. Donald*, 291 F. App'x 759, 762–63 (6th Cir. 2008)). Collier, however, does not allege that he suffered from such an injury at the time of his arrest or even that he requested Mastoridis not handcuff him behind his back. In these circumstances, the Court finds that handcuffing Collier behind his back was objectively reasonable. *See id.*; *cf. Walton v. City of Southfield*, 995 F.2d 1331, 1334, 1341–42 (6th Cir. 1993) (affirming the denial of qualified immunity where the defendant officer handcuffed the plaintiff behind her back despite her pleas to not be handcuffed that way because of an injured shoulder). Turning to Collier's extended time standing on a slope, he does not allege how this may have injured him. He does not claim that he had difficulty maintaining his balance, that he tripped and/or rolled his ankle, or even that standing for a prolonged period aggravated either his gout or heel spurs. He similarly does not allege that he complained about standing on the slope or otherwise requested that he be permitted to stand elsewhere. In these circumstances, the Court finds that it was objectively reasonable for Mastoridis to have Collier stand on the slope. *See Palmer v. Allen*, No. 14-cv-12247, 2016 U.S. Dist. LEXIS 80168, at *12–15 (E.D. Mich. June 21, 2016) (holding that a law enforcement officer did not use excessive force by requiring an arrestee with gout to stand barefoot on concrete notwithstanding the fact that the arrestee informed the officer that this was painful).

Accordingly, Collier has failed to state an excessive force claim against Mastoridis upon which relief can be granted. Collier's excessive force claim against Mastoridis is therefore **DISMISSED**.

> *2. Collier has adequately alleged that Mastoridis falsely arrested and maliciously prosecuted him.*

To prevail on either a false arrest or malicious prosecution claim under the Fourth Amendment, a plaintiff must establish a lack of probable cause. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."); *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) ("To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment…the plaintiff must show that there was a lack of probable cause for the criminal prosecution[.]"). In this case, Mastoridis contends that Collier's false arrest and malicious prosecution claims must be dismissed because probable cause supported both of Collier's arrests and prosecutions, as evidenced by the arrest warrants issued for the DUI and Reckless Driving charges. [Doc. 22 at 8–13]. Mastoridis further contends that he is entitled to qualified immunity and that Collier's false arrest and malicious prosecution claims must be dismissed as a result. [*Id.* at 14–15]. The Court disagrees. At this stage of the proceedings, Collier has adequately alleged that he was arrested and prosecuted without probable cause. His allegations further establish that Mastoridis is not entitled to qualified immunity, at least for now. Accordingly, the Motion must be **DENIED** as to Collier's false arrest and malicious prosecution claims.

Mastoridis's argument that probable cause supported Collier's arrests and prosecutions relies heavily on the two materially identical affidavits he prepared to obtain the DUI and Reckless Driving warrants, and the fact that a neutral magistrate found the statements in these affidavits

sufficient to establish probable cause. [*See* Doc. 22 at 8–13]. But the Court cannot accept the affidavits' factual assertions as true at this stage of the proceedings for the reasons described *supra* Section III.A. Therefore, whether probable cause supported Collier's arrests and prosecutions can only be determined by looking to the allegations of the Second Amended Complaint. As these allegations fail to demonstrate probable cause (or even that a reasonable officer in Mastoridis's position would have believed that probable cause existed), Mastoridis is not entitled to the dismissal of Collier's false arrest and malicious prosecution claims on this ground. This, however, does not end the Court's inquiry.

Mastoridis arrested Collier for Reckless Driving after obtaining an arrest warrant from a Van Buren County magistrate. [Doc. 19 at ¶¶ 67–71; *see also* Doc. 21-2 at 3–4]. In these circumstances, Mastoridis is entitled to qualified immunity "unless the warrant [was] so lacking in indicia of probable cause" that it would have been unreasonable for him to believe that probable cause existed. *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989). One way a plaintiff can challenge the reasonableness of an officer's belief is by showing that "(1) the officer's warrant affidavit contained a false statement or omission that was made either deliberately or with reckless disregard for the truth; and (2) the false statement or omission was material to the finding of probable cause." *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020). "Once a plaintiff makes the first showing, the Fourth Amendment requires the court to 'set aside the [false] statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause.'" *Id.* (alteration in original) (quoting *Sykes*, 625 F.3d at 305). Ordinarily, it is the jury's role "to determine whether probable cause supported issuance of [an arrest] warrant" but a court may make this determination where "the only 'reasonable determination' that a jury

could make is that probable cause existed." *Id.* (quoting *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

Here, Mastoridis's affidavit states that Collier heavily accelerated past him at night on a well-traveled road. [Doc. 21-2 at 3]. It further asserts that Collier was speeding and that he crossed into the oncoming lane of travel three times while navigating several s-curves. [*Id.*]. It also asserts that Collier drove extensively in the wrong lane of travel before Mastoridis initiated the traffic stop. [*Id.*]. The affidavit then asserts that after Collier was stopped, he immediately exited his vehicle and stumbled towards Mastoridis. [*Id.*]. It claims that Mastoridis then directed Collier to return to his vehicle and observed that Collier "had very bloodshot and glossy eyes." [*Id.*]. The affidavit next asserts that when Mastoridis informed Collier that he had observed Collier cross into the oncoming lane of travel three times, Collier responded by stating that it was more times than that. [*Id.*]. The affidavit then notes that Collier began handing Mastoridis his Visa card when asked for his license, registration, and insurance, before stating that Collier performed poorly on the field sobriety tests. [*Id.*]. The affidavit finally concludes by noting that Collier was issued citations for Speeding and a Lane Violation. [*Id.*].

Collier expressly alleges that Mastoridis lied in the affidavit by stating (i) that he accelerated heavily as he passed Mastoridis; (ii) that he drove extensively in the wrong lane of travel prior to the traffic stop; and (iii) that he stumbled when exiting his vehicle. [Doc. 19 at ¶ 40]. Collier further disputes Mastoridis's contention that he immediately exited his vehicle after being stopped and instead claims that Mastoridis approached him as he remained seated. [*Id.* at ¶ 14]. Finally, Collier does not appear to dispute the idea that he performed poorly on the field sobriety tests but notes that Mastoridis ignored the fact that he suffers from gout and has special inserts for heel spurs which affect his gait and could presumably impact his performance on certain

field sobriety tests. [*See id.* at ¶¶ 25–26]. At the motion-to-dismiss stage, these allegations are sufficient to warrant setting aside the allegedly false statements and including the omission concerning Collier's gout and heel spurs to determine whether the affidavit could still establish probable cause. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d at 548 (stating that a court "must accept as true 'well pleaded facts' set forth in the complaint" when ruling on a motion to dismiss).

Taking these alterations into account, the affidavit would have asserted that Collier was speeding and that he crossed into the oncoming lane of travel three times while navigating several s-curves at night. [Doc. 21-2 at 3]. It would have further asserted that after initiating the traffic stop, Mastoridis observed that Collier "had very bloodshot and glossy eyes" and that Collier stated that he crossed into the oncoming lane more than three times. [*Id.*]. It would also have asserted that Collier began handing Mastoridis his Visa card when Mastoridis asked for his license, registration, and insurance. [*Id.*]. It would have also noted that Collier performed poorly on the field sobriety tests but contextualized this statement by noting that Collier suffers from gout and that his gait is affected by inserts he wears for heel spurs. [*See id.*; Doc. 19 at ¶¶ 25–26]. Finally, it would have noted that Collier was issued citations for Speeding and a Lane Violation. [Doc. 21-2 at 3].

If a jury was to consider only the foregoing information, the Court cannot say that the only reasonable determination it could reach is that probable cause existed to believe that Collier had committed the offense of Reckless Driving. *Tlapanco*, 969 F.3d at 649. Although the modified affidavit would show that Collier committed several traffic offenses, those offenses do not automatically equate to the "willful or wanton disregard for the safety of persons or property" that Tennessee's Reckless Driving law criminalizes. *See* Tenn. Code Ann. § 55-10-205(a). A willful or wanton disregard for safety requires an individual to have a "heedless and reckless disregard

- 12 -

Case 1:24-cv-00189-CEA-MJD   Document 44   Filed 04/25/25   Page 12 of 15
PageID #: 233

for another's rights, with the consciousness that the act or omission to act may result in injury to another." *State v. Wilkins*, 654 S.W.2d 678, 679 (Tenn. 1983). Although a reasonable jury might conclude that Collier's speeding and crossing into the oncoming lane of travel evidenced such a disregard, it could also reasonably conclude that while Collier may not have been the best driver, he was not acting recklessly. A reasonable jury could also discount the modified affidavit's assertions suggesting that Collier was impaired. His bloodshot and glossy eyes could be explained by the lateness of the day; his mistakenly providing Mastoridis with his Visa card could be explained by nervousness or darkness; and his poor performance on the field sobriety tests could be explained, at least in part, by his medical status. Accordingly, a reasonable jury could find that the Reckless Driving affidavit—stripped of the allegedly false statements and including the omission concerning Collier's medical status—would fail to establish probable cause for arresting Collier. In these circumstances, Mastoridis cannot rely on Reckless Driving warrant to dismiss Collier's false arrest claim, at least not at this stage of the proceedings. *See Tlapanco*, 969 F.3d at 649; *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (noting that overcoming a qualified immunity defense at the motion-to-dismiss stage is a "low bar"). This leaves only one final matter for the Court to address.

Although Collier was never convicted of Reckless Driving, he was convicted of Speeding 24mph in a 20mph zone in connection with those proceedings. [*See* Doc. 21-2 at 1–2]. To prevail on a Fourth Amendment malicious prosecution claim, a plaintiff must show that the underlying criminal proceeding was terminated in his favor. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Mastoridis asserts that because Collier was convicted of speeding as a result of his Reckless Driving prosecution, those proceedings did not terminate in his favor, and he cannot bring a malicious prosecution claim based on that charge. [Doc. 22 at 12–13]. The Court disagrees. As the

Supreme Court made clear in *Chiaverini v. City of Napoleon*, Fourth Amendment malicious prosecution claims must be evaluated "charge by charge[,]" and the existence of a valid charge does not always foreclose a Fourth Amendment malicious prosecution claim. 602 U.S. 556, 562–63 (2024). Thus, Collier's Speeding conviction does not automatically defeat his Reckless Driving malicious prosecution claim. *See id.*

Rather, whether this claim may proceed notwithstanding Collier's Speeding conviction depends on the degree to which Speeding and Reckless Driving are related under Tennessee law. The favorable termination requirement—also known as the *Heck* bar—prevents individuals from challenging the validity of outstanding convictions through civil tort actions. *Heck*, 512 U.S. at 486. The doctrine "avoids parallel litigation over the issues of probable cause and guilt[,] and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484 (cleaned up). That said, the *Heck* bar does not foreclose a plaintiff's claims where the plaintiff's success would not call into question the validity of any outstanding conviction against him. *Id.* at 487 ("[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."). A claim must "necessarily require the plaintiff to prove the unlawfulness of his conviction" for the *Heck* bar to apply. *Id.* at 486.

Here, Collier's Speeding conviction would not necessarily be called into question if he was to prevail on his Reckless Driving malicious prosecution claim. Although Speeding can support a charge of Reckless Driving, it is not a required element of the offense. TENN. CODE ANN. § 55-10-

205(a) ("Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving."). Furthermore, not every instance of Speeding qualifies as Reckless Driving, even when the driver is significantly over the speed limit. *See State v. Mitchell*, C.C.A. NO. 02C01-9702-CC-00070, 1997 Tenn. Crim. App. LEXIS 871, *18 (Crim. App. Sep. 15, 1997) (finding that driving 27mph over the speed limit did not qualify as Reckless Driving under the circumstances); *State v. Miller*, No. W2001-02045-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 137, at *11 (Crim. App. Feb. 15, 2002) (finding that driving 12mph over the speed limit did not qualify as Reckless Driving under the circumstances). Thus, Collier could present his case to a jury, fully admit to Speeding, and still show that Mastoridis is liable for maliciously prosecuting him for Reckless Driving. In other words, Collier can prevail on his Reckless Driving malicious prosecution claim without calling his Speeding conviction into question. Therefore, the *Heck* bar does not require the dismissal of his Reckless Driving malicious prosecution claim. *See Heck*, 512 U.S. at 486–87.

Accordingly, Mastoridis is not entitled to the dismissal of any of Collier's false arrest or malicious prosecution claims against him at this time.

IV. **CONCLUSION**

For the foregoing reasons, Defendant Elijah Mastoridis's Motion to Dismiss [Doc. 21] is **GRANTED IN PART** and **DENIED IN PART**. Collier's Fourth Amendment excessive force claim against Matoridis is **DISMISSED**, but his Fourth Amendment false arrest and malicious prosecution claims against Mastoridis shall proceed.

SO ORDERED.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**