UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| RONNY AUSTON COLLIER, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:24-cv-189 |
| v. | ) | Judge Atchley |
| ELIJAH MASTORIDIS, *et al.*, | ) | Magistrate Judge Dumitru |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant David Salyers's unopposed Motion to Dismiss [Doc. 46]. For the following reasons, the Motion [Doc. 46] is **GRANTED**.

I.     BACKGROUND

This is a civil rights case. In June 2023, Plaintiff Ronny Auston Collier chaperoned the Future Farmers of America Forestry Camp at Fall Creek Falls State Park. [Doc. 19 at ¶¶ 9–10]. One night, he was tasked with purchasing flour for the next day's breakfast. [*Id.* at ¶ 11]. As Collier drove to the store, Defendant Elijah Mastoridis, a Tennessee State Park Ranger, began following him and initiated a traffic stop. [*Id.* at ¶¶ 8, 12–13]. Mastoridis then approached Collier, accused him of being drunk, and placed him in handcuffs. [*Id.* at ¶¶ 14, 19]. Collier remained cuffed and standing on a slope while Mastoridis performed a consensual search of his vehicle. [*See id.* at ¶¶ 20, 28]. This search did not reveal any alcohol, drugs, or other contraband. [*Id.* at ¶ 21]. Nevertheless, Mastoridis required Collier to perform several standard field sobriety tests which he determined Collier failed. [*Id.* at ¶¶ 24–25]. In making this determination, Mastoridis ignored the fact that Collier suffers from gout and that his gait is affected by special shoe inserts he must wear for heel spurs. [*Id.* at ¶ 26].

Collier was then taken to the Van Buren County Jail, issued a multiple offense citation for Speeding and Lane Violations, and charged with Driving Under the Influence. [*Id.* at ¶¶ 37–38; Doc. 21-1; Doc. 21-3].[1] Around this time, Mastoridis obtained an arrest warrant for the DUI charge from a Van Buren County magistrate.[2] [Doc. 21-3 at 1]. To obtain this warrant, Mastoridis prepared an affidavit of complaint which Collier claims was littered with false statements. [*Id.* at 2; Doc. 19 at ¶ 40]. After several hours in jail, Collier's blood was taken for testing, and he was released after posting bond. [Doc. 19 at ¶¶ 51–53]. Collier then immediately went to an urgent care clinic to complete a separate drug and alcohol screening as required to maintain his commercial driver's license. [*Id.* at ¶¶ 56–57]. Both this screening and the government's blood test came back negative for alcohol and drugs. [*Id.* at ¶¶ 58, 62]. Faced with this reality, the prosecutor in Collier's case offered him a deal, plead guilty to Reckless Driving in exchange for the DUI and Speeding charges being dropped. [*Id.* at ¶¶ 64–65]. Collier refused. [*Id.* at ¶ 66]. In response, Mastoridis went to a Van Buren County magistrate and obtained a new warrant to arrest Collier for Reckless Driving based on a materially identical affidavit to the one he prepared to obtain Collier's DUI warrant. [*See id.* at ¶ 67; Doc. 21-2 at 3; Doc. 21-3 at 2]. With this new warrant in hand, Mastoridis arrested Collier for Reckless Driving. [Doc. 19 at ¶¶ 70–71]. This charge was later dismissed, but Collier was convicted of driving 24mph in a 20mph zone.[3] [*Id.* at ¶ 76; Doc. 21-2 at 1–2].

---

[1] The Court may consider Docs. 21-1 through 21-3 without converting the instant Motion into one for summary judgment for the reasons discussed in its Memorandum Opinion and Order addressing Mastoridis's Motion to Dismiss. *See Collier v. Mastoridis*, No. 1:24-cv-189, 2025 U.S. Dist. LEXIS 79120, at *5–8 (E.D. Tenn. Apr. 25, 2025).

[2] Under Tennessee law, arrest warrants "serve[] a dual function: first, as the authority for an arrest (where an arrest has not already been lawfully made) and, secondly, as a statement of the charge which the accused is called upon to answer." TENN. R. CRIM. P. 4 (Advisory Commission Comment). When a Tennessee defendant is arrested without a warrant, law enforcement will still obtain an arrest warrant after the fact as the warrant "still serves as the official charging instrument, issued after a judicial finding of probable cause, and gives notice of the charge which must be answered." *Id.*

[3] Collier alleges that he obtained an "unqualified dismissal of all charges." [Doc. 19 at ¶ 81]. Because this allegation is contradicted by the judgment in Collier's case, [Doc. 21-2 at 1–2], the Court is not required to accept it as true, even at the motion-to-dismiss stage. *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

This lawsuit followed. [Doc. 1]. Collier brings individual capacity claims against both Mastoridis and Defendant David Salyers, Commissioner of the Tennessee Department of Environment and Conservation (i.e., the Department that oversees Tennessee State Park Rangers like Mastoridis). [Doc. 19 at ¶¶ 7–8, 83–108]. Now, Salyers moves to dismiss the claims against him. [Doc. 46]. Plaintiff does not oppose the Motion. [Doc. 54].

II. **STANDARD OF REVIEW**

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

Collier brings five individual capacity claims against Salyers. First, he brings a Section 1983 claim based on Salyers's alleged failure to properly train Mastoridis. [Doc. 19 at ¶ 83–90]. Second, he brings a related Section 1983 deliberate indifference claim based on Salyers's alleged failure to train *and supervise* Mastoridis. [*Id.* at ¶¶ 91–95]. Third, Collier brings a Fourth Amendment unreasonable seizure claim pursuant to Section 1983 against Salyers based on the allegedly false arrests effectuated by Mastoridis. [*Id.* at ¶¶ 96–99], Fourth, Collier brings a similar Fourth Amendment claim against Salyers based on the allegedly malicious prosecutions resulting from his arrests. [*Id.* at ¶¶ 100–05]. Fifth and finally, Collier brings a claim for negligent infliction of emotional distress ("NIED") under Tennessee law. [*Id.* at ¶¶ 106–108]. Each of these claims must be dismissed.

Starting with Collier's failure to train and deliberate indifference claims, both are premised on the idea that Salyers, as the top official over Tennessee State Park Rangers, failed to adequately train and supervise Mastoridis. [*See id.* at ¶¶ 83–95]. Collier, however, has failed to allege any facts concerning what role Salyers played in Mastoridis's training and supervision. "A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Establishing liability requires a plaintiff to show, at a minimum, "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (internal quotation marks omitted). Respondeat superior alone is not enough. *Id.* Here, there are no factual allegations suggesting that Salyers "implicitly authorized,

- 4 -

Case 1:24-cv-00189-CEA-MJD   Document 56   Filed 09/02/25   Page 4 of 6   PageID #: 268

approved, or knowingly acquiesced" in the allegedly illegal arrests and prosecutions of Collier. Accordingly, Collier's failure to train and deliberate indifference claims must be dismissed.

Turning to Collier's Fourth Amendment false arrest and malicious prosecution claims, Collier does not allege that Salyers was personally involved in the events underlying these claims. [*See generally* Doc. 19]. This omission is fatal. "[A] complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *see also Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (emphasis in original)). Because the Second Amended Complaint does not allege that Salyers was personally involved in Collier's arrests or prosecutions, Collier has failed to state a Fourth Amendment against Salyers, and his Fourth Amendment false arrest and malicious prosecution claims against Salyers must therefore be dismissed.

Looking finally to Collier's NIED claim, Tennessee Code Annotated Section 9-8-307(h) provides that "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Put another way, Tennessee state employees are absolutely "immune from suit for any act of negligence committed within the scope of their employment." *Luther v. Compton*, 5 S.W.3d 635, 641 (Tenn. 1999). This immunity extends to state-law claims in both state and federal court. *Walker v. Norris*, 917 F.2d 1449, 1458 (6th Cir. 1990); *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1421 (6th Cir. 1996). Here, Collier's NIED claim is premised on Salyers's allegedly negligent

"acts and/or omissions" as a state official. [*See* Doc. 19 at ¶¶ 100–05]. Consequently, Section 9-8-307(h) applies, and Salyers is immune from Collier's NIED claim. *Luther*, 5 S.W.3d at 641; *see also Crowley v. Anderson Cnty.*, No. 3:17-cv-169, 2018 U.S. Dist. LEXIS 238009, at *27 (E.D. Tenn. Aug. 6, 2018) (holding that Section 9-8-307(h) applies to NIED claims). Therefore, Collier's NIED claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant David Salyers's Motion to Dismiss [Doc. 43] is **GRANTED**. The claims against him are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**